**IN THE UNITED STATES DISTRICT**
**COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS - CWA, AFL-CIO 501 Third Street, N.W. Washington, D.C. 20001 <br><br> and <br><br> TRANSPORTATION TRADES DEPARTMENT, AFL-CIO 888 16th Street, Suite 650 Washington, D.C. 20009 <br><br> Plaintiffs, <br><br> v. <br><br> ELAINE L. CHAO United States Secretary of Labor 200 Constitution Avenue, N.W. Washington, D.C. 20210 <br><br> and <br><br> MARION BLAKEY Administrator Federal Aviation Administration 800 Independence Avenue, S.W. Washington, D.C. 20591 <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. --- ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT**

The Association of Flight Attendants - CWA, AFL-CIO ("AFA" or "the Union"), which

represents more than 46,000 flight attendants on 27 airlines based in the United States and around

the world, and the Transportation Trades Department, AFL-CIO ("TTD"), an umbrella organization

of 35 transportation Unions, bring this action in the nature of mandamus pursuant to 28 U.S.C. §

1361 to compel Secretary of Labor, Elaine L. Chao, to exercise her statutory duty under The

Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.,* to ensure the health and safety

of crewmembers working in the airline industry.   In addition, AFA seeks a declaratory judgment

pursuant to 28 U.S.C. § 2201, against Marion Blakey, Administrator for the Federal Aviation

Administration ("FAA"), declaring that, as a matter of law, the FAA has failed to exercise its

asserted jurisdiction over occupational health and safety of crewmembers working aboard civil

aircraft in operation.

## JURISDICTION AND VENUE

1.       This is a mandamus action pursuant to 18 U.S.C. § 1361 to compel a United States

government official to perform her statutory duty, and an action pursuant to 28 U.S.C. § 2201 for

declaratory relief.  This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1361 and 28

U.S.C. §§ 1331 and 1337.

2.       Venue is proper in this judicial district under 28 U.S.C. § 1391(e), in that defendants'

headquarters are located in this district and plaintiff AFA is headquartered here.

## PARTIES

3.____Plaintiff, AFA is an unincorporated labor organization representing more than 46,000

flight attendants employed by 27 airlines based in the United States and around the world.  The

Union is the exclusive representative of those flight attendants under Section 1, Sixth of the Railway

Labor Act , 45 U.S.C. § 151, Sixth, for purposes of collective bargaining.

4.       Plaintiff, the Transportation Trades Department ("TTD") is an affiliate umbrella

organization of the AFL-CIO, that represents the interests of several million aviation, rail, transit,

trucking, highway and longshore workers in 35 different unions before Congress, the Executive

Branch and independent government agencies.

5.      Defendant Elaine L. Chao is the United States Secretary of Labor ("Secretary").  She is sued in her official capacity pursuant to 28 U.S.C. § 1361.

6.      Defendant Marion Blakey is the Administrator of the Federal Aviation Administration and is being sued in her official capacity pursuant to 5 U.S.C. § 703.

## FACTS

### Flight Attendant Nonfatal Injuries and Illnesses

7.      Flight attendants encounter a  wide variety of occupational hazards while working aboard commercial flights,  including turbulence, severe air pressure changes, unwieldy service carts, broken luggage bins, balky exit doors and door handles, exposure to toxic chemical air bleeds into the passenger cabin, unruly and sick passengers, threats of terrorism and emergency evacuations. In fact, flight attendants suffer occupational injuries and illnesses at a rate that exceeds workers in all private industry.

8.      AFA has analyzed U.S. Bureau of Labor Statistics ("BLS") data that categorizes the most serious workplace injuries and illnesses by events, natures, sources and parts of body affected.  Some of AFA's findings from its analysis of the BLA data include:

- ●      Rates per hours worked of occupational injuries and illnesses among scheduled air transport workers are historically several times greater than the rates for all private industry workers; and even significantly greater than rates observed in the construction industry.  For example, for the years 1994 and 1998, flight attendant injury and illness days away from work incidence rate (8.0 and 7.9 incidents per 100 workers, respectively) were similar to the rates for all scheduled air transport workers (7.7 and 8.4, respectively), and were significantly higher and have decreased much more slowly than the corresponding rates for workers in private industry (2.8 and 2.0, respectively) and the construction industry (4.9 and 3.3, respectively);

- ●      In 2003, the latest year for which overall industry injury and illness rates are available, the days away from work incidence rate for all scheduled air transport

workers was 6.2 incidents per 100 workers, compared to a rate for workers in all private industry of 1.5 and a rate for construction industry of 2.6. The ratios of these rates are little changed from those for 1998; in other words, injuries and illnesses for scheduled air transport workers occur about four times more frequently than for workers in all private industry, and more than twice as often as for those in construction.

9.    With respect to the specific characteristics of flight attendant injuries and illnesses, AFA's analysis of the BLS' detailed data yields the following conclusions:

- Overexertion and contact with objects are the most significant exposure events;

- Approximately 90% of cases are traumatic in nature, including sprains/strains/tears, effects of air pressure and bruises and contusions;

- All body parts are affected, but injuries/illnesses to the trunk, head/neck and extremities predominate.

**The Occupational and Safety Health Act of 1970**

10.    The Occupational Safety and Health Act of 1970 ("OSH Act") was enacted by Congress "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651(b). The OSH Act is administered by the Occupational Safety and Health Administration ("OSHA").

11.    With the exception described in paragraph 12 below, the OSH Act applies to all workplaces in the United States and Territories pursuant to 29 U.S.C. §653(a) and empowers the Secretary to promulgate regulations and occupational safety standards to ensure that an employer "shall comply with occupational safety and health standards promulgated under this Act." 29 U.S.C. § 654(a)(2).

12.    Under Section 4(b)(1) of the OSH Act, the statute does not apply to workplaces where other Federal "agencies exercise statutory authority to prescribe or enforce standards or regulations."

29 U.S.C.§ 653 (b)(1) ("Section 4(b)(1)").

**The FAA's Assertion of Jurisdiction Over Crewmember Health and Safety**

13.     On July 10, 1975, the Federal Aviation Administration ("FAA") published a statement in the Federal Register asserting complete and exclusive  jurisdiction over crewmember health and safety on "civil aircraft in operation . . . from the time it is first boarded by a crewmember, preparatory to a flight, to the time the last crewmember leaves the aircraft after completion of that flight, . . . even if the engines are shut down."  40 Fed. Reg. 29114 (1975).

14.     In asserting such jurisdiction over crewmember health and safety, the FAA claimed that "with respect to civil aircraft in operation, the overall FAA regulatory program . . . fully occupies and exhausts the field of aircraft crewmember occupational safety and health."  40 Fed. Reg. 29114 (1975).

15.      At all times since 1975 the FAA has continued to assert such complete and exclusive jurisdiction over crewmember health and safety aboard a civil aircraft.

16.     Despite the fact that the FAA asserts complete and exclusive jurisdiction to regulate the crewmembers' workplace, the agency has at all relevant times affirmatively declined to exercise its asserted statutory authority to prescribe or enforce standards or regulations affecting the occupational safety and health of crewmembers.  Significant areas of regulatory neglect include, but are not limited to, recording and reporting of occupational injuries and illnesses; blood borne pathogens; noise; sanitation; hazard communications; access to employee exposure and medical records, and anti-discrimination protections for reporting safety and health violations.

**AFA's 1990 Petition for Rulemaking Occupational Safety & Health Standards for Airline Crewmembers**

17.    After years of inaction by the FAA, on May 8, 1990, AFA filed a petition for rule

making with the FAA that asked the agency to adopt selected OSHA safety regulations and apply

them to the crewmembers working in the airline industry addressing such areas as the recording and

reporting of injuries; access to employee exposure and medical records; right to inspections; safety

definitions; the handling of hazardous materials; personal protective equipment; medical and first

aid; fire protection, and toxic and hazardous substances.

18.    In submitting its petition for rule-making, AFA was attempting to fill the void created

when FAA asserted jurisdiction over crewmember health and safety without actually exercising that

authority.  As AFA stated in its petition:

> This petition offers one solution to the gaps in crewmember health and safety
> coverage caused by the FAA's *de facto* industry-wide preemption of OSHA.
> Although this industry-wide preemption is probably incorrect as a matter of law, it
> is the rule currently followed by OSHA and the FAA, with the possible exception of
> OSHA's recordkeeping requirement.  If the FAA is going to claim total jurisdiction
> over crewmembers, it should *exercise* that jurisdiction by providing protections equal
> to those provided by OSHA.  It is for that reason that this petition asks the FAA to
> adopt the OSHA regulations and apply them to crewmembers.  (Emphasis added).

**FAA's Rejection of AFA's Petition For Rulemaking**

19.    Almost seven (7) years after AFA filed its petition for rulemaking, the FAA finally

responded by letter dated June 6, 1997, in which it stated in part:

> The FAA has determined that the issues identified in your petition may have merit
> but do not address an immediate safety concern.  Because of budgetary constraints,
> and the need to meet the demands of a changing aviation industry and a complex air
> transportation system, the FAA finds that it must dedicate its rulemaking resources
> to the most pressing problems and issue associated with safety.  For these reasons,
> we are unable to consider your petition for Rulemaking; therefore it is denied.

20.    Following the FAA's rejection of AFA's petition for rulemaking, the Union

continued its efforts to persuade FAA to adopt OSHA standards to ensure crewmember health and

safety in the airline industry.  Despite these efforts, the FAA continued to assert exclusive authority

over airline workplace safety under Section 4(b)(1) of the OSH Act without exercising that authority

to regulate crewmember health and safety in any significant manner.

**The August 7, 2000 Memorandum of Understanding Between the FAA and OSHA**

21.    On August 7, 2000, after increased pressure from AFA, the FAA and OSHA entered

into an historic "Memorandum of Understanding" ("MOU"), the purpose of which was "to enhance

safety and health in the aviation industry."  In the MOU, the FAA and OSHA agreed to establish a

joint team (FAA/OSHA Aviation Safety and Health Team, "ASH Team" or "Joint Team") to identify

the factors to be considered in determining whether the OSH Act's requirements could be applied

to the working conditions of employees on aircraft in operation (other than flight deck crew) without

compromising aviation safety.

22.    The MOU required the Joint Team to produce a first report within 120 days from the

date of the MOU's execution that addressed  whether and to what extent OSHA's existing standards

and regulations with respect to six (6) specific health and safety areas could be applied to employees

on aircraft in operation without compromising aviation safety.

23.    The MOU also obligated the FAA to replace its 1975 Federal Register Notice with

a new policy statement, published in the Federal Register, setting forth the circumstances under

which the regulatory requirements of OSHA will apply to the working conditions of employees on

aircraft in operation (other than flight deck crew).

24.    In December 2000, the first report of the FAA/OSHA aviation safety and health team

concluded that, with the exception of bloodborne pathogens and noise, the other five (5) subject

areas under consideration could be implemented for all employees in the aviation industry without implicating aviation safety concerns. With respect to bloodborne pathogens and noise, the report found that the "OSHA requirements that necessitate engineering and administrative controls may implicate aviation safety and would need to be subject to FAA approval."

25.     The report also proposed that the team give further consideration to establishing "a procedure for coordinating and supporting enforcement of the OSH Act with respect to working conditions of employees on aircraft in operation (other than flight deck crew) and for resolving jurisdictional questions." Although the December 2000 report recommended that the ASH Team continue to meet to resolve this and other issues, the team did not meet again until January, 2002, at which time the team could not agree on a timeline for implementation of relevant OSHA regulatory standards for employees on aircraft in operation.

**The September 2001 Report of the Office of Inspector General of the DOT**

26.     In September 2001, the Office of the Inspector General ("OIG") for the Department of Transportation ("DOT") issued a report titled: "Further Delays in Implementing Occupational Safety and Health Standards for Flight Attendants Are Likely." ("The OIG Report"). The OIG review was performed in response to a request by Congressman Peter DeFazio who expressed concerns over the dearth of OSHA standards for airline employees in the areas of blood-borne pathogens, repetitive motion injuries, noise, and unhealthy cabin air.

27.     The OIG Report found that in the 26 years since the FAA asserted statutory authority for prescribing and enforcing occupational safety and health standards for aircraft crewmembers onboard aircraft,

> it has not issued industry standards to address employee safety and health issues
> associated with working conditions onboard aircraft in operation. Instead, FAA

8

focused its resources on providing and enforcing industry standards for aircraft design and operational problems affecting safety.

Furthermore, the OIG concluded that "unless FAA and OSHA resume working together, we have no confidence that industry standards will be issued in the near future to address occupational hazards."

28.     Accordingly, the OIG report recommended that within 90 days of the issuance of its report,

> FAA, in conjunction with OSHA, [should] establish milestones for the completion of work begun under the August 2000 MOU, and address the occupational safety and health concerns identified in the December 2000 joint report.  Within this timeframe, FAA should also reinstitute its rulemaking procedures on injury and illness recordkeeping and reporting, which FAA can do without OSHA's assistance.  This is necessary in order to identify the types and frequency of injuries and illnesses occurring.  If FAA implements our recommendations, it will in our opinion, be a clear sign of forward progress.  We will advise the Secretary of Transportation and the Congress of FAA's actions.  ***If these recommendations are not implemented, it will, in our opinion, be apparent that after 25 years of limited progress***, ***an alternative approach will be necessary.  One approach would be to revoke FAA's exclusive authority to provide occupational safety and health standards for employees in aircraft, and have this function performed by OSHA. FAA would then intervene in any regulatory proceedings, when in FAA's judgment, a proposed OSHA regulation would negatively affect the safety of air traffic operations.*** (Emphasis added).

29.     To date, the FAA and OSHA have taken no steps whatsoever to implement the recommendations of the OIG Report, or in any other way regulate the workplace health and safety conditions of flight attendants.  Although the FAA/OSHA Aviation and Safety Team met on several occasions since the September 2001 OIG's report, they took no recognizable steps to improve employee occupational health and safety in the airline industry.

**Aviation Safety and Health Partnership Program**

30.    The FAA took a final step towards the complete abandonment of its August 2000

MOU with OSHA when it announced on March 4, 2003, that it was creating the "Aviation Safety

and Health Partnership Program" ("ASHPP"). In its announcement in the Federal Register, the FAA

claimed that the ASHPP was being created to provide "empirical data concerning injury and illness

hazards on aircraft in operation" to allow air carriers to "voluntarily" provide "selective" safety and

health protections for "employees not covered by OSHA." In addition, the FAA announced that the

ASHPP

> would preserve the FAA's preeminent authority over aviation safety issues by
> reserving to the FAA complete and exclusive responsibility for determining whether
> proposed abatements of safety and health hazards would compromise or negatively
> affect aviation safety. The ASHPP would include electronic web based procedures
> for air carriers to report employees' injury and illness information, thereby enabling
> FAA to obtain the required data. This data will be used to determine if FAA should
> take additional measures, including rulemaking activities, to address safety and
> health issues in air carrier operations.

31.    On March 31, 2003, AFA, along with many of the other affiliated unions of the

TTD, wrote to Gene Kirkendall, of the FAA Flight Standards Service, and informed him that the

TTD unions were "disappointed with and angered by the FAA's decision to create a voluntary

program that will halt the progress we have made over the years towards providing the nation's flight

attendants with the federal safety and health protections they need and deserve." Furthermore, the

TTD wrote that it was troubled by the "fact that the ASHPP proposal relies solely on voluntary

measures, with no underlying regulatory requirements or enforcement provisions."

32.    Since its inception, the ASHPP has failed to propose or institute any procedures, rules

or guidelines for carriers to follow to improve airline employee health and safety protections.

33.    As a result of the voluntary nature of the ASHPP, air carriers have instituted no

improvements to reduce or mitigate flight attendant injuries.

34.    As a direct result of the FAA's failure to exercise its asserted statutory authority, flight attendants are substantially more likely to be injured on the job than employees in other industries.

## FIRST CAUSE OF ACTION

35.    The allegations contained in paragraphs 1 through 34 above are incorporated by reference as if fully set forth herein.

36.    Since 1975, the FAA has unilaterally asserted exclusive jurisdiction over employee occupational health and safety in the airline industry.  During that time, however, the FAA has failed to exercise that exclusive authority in conformity with the underlying purposes of the OSH Act of 1970.  Specifically, the FAA has, at all relevant times, refused to establish occupational health and safety standards and regulations designed to ensure the health and safety of airline crewmembers and to reduce their injuries.

37.    Despite the fact that the FAA has refused to exercise its asserted jurisdiction, OSHA has not, pursuant to Section 4(b)(1), exercised its jurisdiction to regulate the health and safety of flight attendants.

38.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court should issue an order declaring that the FAA has failed to exercise its asserted jurisdiction to establish occupational health and safety standards for crewmembers working aboard civil aircraft in operation. As a result, OSHA has jurisdiction to ensure the occupational health and safety of those crewmembers.

## SECOND CAUSE OF ACTION

39.    The allegations contained in paragraphs 1 through 38 above are incorporated by reference as if fully set forth herein.

40.    Pursuant to 29 U.S.C. § 651 *et seq.,* the OSH Act of 1970, the Secretary of Labor is required to establish mandatory occupational safety and health standards applicable to businesses affecting interstate commerce, except where other federal agencies exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

41.    In light of the FAA's failure to exercise its asserted statutory authority to guarantee a safe workplace for crewmembers working aboard civil aircraft in operation, the Secretary has failed to fulfill her statutory duty under the OSH Act to ensure safe and healthful working conditions for those employees.

42.    Accordingly, the Secretary must be compelled pursuant to 28 U.S.C. § 1361, to fulfill her clear and unambiguous statutory duty to protect the health and safety of airline crewmembers through the imposition of mandatory occupational health standards on the airline industry promulgated by OSHA.  In addition, the Secretary, where appropriate, must exercise her statutory duty to monitor and enforce those standards in accordance with the mandates of the OSH Act.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully requests that this Court issue:

1.    A declaration pursuant to 28 U.S.C. §2201 finding that:

    a.    the FAA, as a matter of law, has failed to exercise its asserted authority to regulate and protect the occupational health and safety of crewmembers (other than flight deck crew) working aboard civil aircraft in operation, and;

    b.    As a result of its failure to regulate, the FAA has no jurisdiction over crewmember occupational health and safety on civil aircraft in operation, contrary to the FAA's statement in the Federal Register on July 10, 1975.

2.    A preliminary and permanent injunction that,

    a.    compels the Secretary of Labor to perform her statutory duty under the OSH Act of 1970 to mandate occupational health and safety standards for airlines employing crewmembers (other than flight deck crew) working aboard civil aircraft in operation;

    b.    compels the Secretary of Labor to enforce the OSHA occupational health and safety standards against airlines employing crewmem bers (other than flight deck crew) working aboard civil aircraft in operation, and;

    c.    retains jurisdiction to ensure that the Secretary complies fully with any and all orders of this Court.

3.    An award of attorneys' fees and costs of this litigation, and

4.    Grant such other relief as this Court may deem just and appropriate.

                Respectfully submitted,

                _____

                Edward J. Gilmartin, D.C. Bar No. 388361
                Deirdre Hamilton, D.C. Bar No.  472334
                ASSOCIATION OF FLIGHT
                  ATTENDANTS-CWA, AFL-CIO
                501 Third Street, N.W., 9th Floor
                Washington, DC   20001-2797
                (202) 434-0577

_____    Larry I. Willis, D.C. Bar No. 458152
                General Counsel
                TRANSPORTATION TRADES
                DEPARTMENT, AFL-CIO
                888 16TH Street, N.W.,   Suite 650
                Washington, D.C.  20009
                (202) 628-9262

                Attorneys for Plaintiffs