UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS -CWA, AFL-CIO,   et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:05-cv-01850-RCL |
| ELAINE L. CHAO, SECRETARY, U.S. DEPARTMENT OF LABOR, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**INTRODUCTION**

Plaintiffs seek an order from the Court declaring that the Federal Aviation Administration

(FAA) has failed to exercise its authority to promulgate rules and regulations to ensure the health

and safety of aircraft crewmembers and, in addition, directing the Secretary of Labor to exercise

her statutory duty under the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678

(OSH Act or the Act) to issue such rules.  Plaintiffs suggest that flight attendants have not been

afforded any protections affecting their safety and health in the workplace.  However, the

complaint ignores not only the myriad safety and health rules governing the cabins of civil

aircraft, but also the unique circumstances of this particular workplace, the public safety concerns

imposed by aviation travel, and the complexities of the issues involved.  These complexities led

FAA to conclude that it  –not the Occupational Safety and Health Administration (OSHA)– was

in the best position to regulate the working conditions of flight attendants in the cabin of

airplanes because the safety and health of these employees cannot be separated from the safety

and health of the traveling public.

Not only do the allegations in the Complaint fail to acknowledge that both FAA and OSHA have dedicated significant resources to the consideration of the health and safety of the cabin crew, they fail to raise a justiciable case for which relief would be appropriate at this time or in the district court. Plaintiffs have not requested that either FAA or OSHA undertake regulatory action, except for a petition for rulemaking to FAA that was denied more than eight years ago and not appealed, and they do not have standing or ripeness to maintain this suit. Moreover, since FAA not only has assumed exclusive responsibility over flight attendants' working conditions but also has issued rules and regulations governing safety and health issues in the cabins, plaintiffs' first claim for a declaratory judgment against FAA should be dismissed for failure to state a claim for which relief can be granted. Plaintiffs' second claim also should be dismissed because, at bottom, plaintiffs seek to compel FAA to take specific action, claims that could only be raised in the court of appeals after a petition for rulemaking had been made. Further, the second claim, which seeks mandamus relief requiring that OSHA assume responsibility for protecting flight attendants in their work place, should be dismissed since mandamus relief would not lie here and because, under the OSH Act, appeals from OSHA's alleged failure to act must be presented to the court of appeals.

## BACKGROUND

A.    **The OSH Act**

After extensive investigation, Congress concluded in 1970 that "personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability

compensation payments." 29 U.S.C. § 651.  *See also* <u>Atlas Roofing Co. v. OSHRC</u>, 430 U.S.

442, 444-45 (1977). Accordingly, Congress adopted the OSH Act "to assure so far as possible

every working man and woman in the Nation safe and healthful working conditions and to

preserve our human resources." 29 U.S.C. § 651(b).  The OSH Act authorizes the Secretary of

Labor to set and enforce "mandatory occupational safety and health standards" to govern a broad

range of employers who engage in interstate commerce.  29 U.S.C. §§ 651, 654, 655, 659.

At the time the OSH Act was passed, various other federal agencies already had statutory

authority to prescribe and enforce standards and regulations affecting occupational safety and

health.  To avoid duplication of effort, Congress provided in Section 4(b)(1) that the OSH Act

does not "apply to working conditions of employees with respect to which other Federal agencies

. . . exercise statutory authority to prescribe or enforce standards or regulations affecting

occupational safety and health." 29 U.S.C. § 653(b)(1).  *See also* 29 C.F.R. § 1975.3(c) ("sole

purpose" of § 4(b)(1) "was to avoid duplication of effort by Federal agencies in establishing a

national policy of occupational safety and health protection").

## B.    FAA's Regulatory Activity

The FAA enabling statute provides that the Administrator "shall promote safe flight of

civil aircraft in air commerce" by promulgating regulations and minimum standards "in the

interest of safety" on topics ranging from aircraft design and manufacture to aircraft inspection to

aircraft performance.  49 U.S.C. § 44701.  By this provision, Congress expressly intended to

provide the Administrator of FAA with "plenary authority to [m]ake and enforce safety

regulations governing the design and operation of civil aircraft" in order to insure "the maximum

possible safety." H.R. Rep. No. 2360, 85th Cong., 2d Sess. 2, 7, *reprinted in* 1958 U.S. Code

Cong. & Admin. News at 3741.

In 1975, FAA stated in a Federal Register Notice that this statute granted it "complete and exclusive responsibility for the regulation of the safety of civil aircraft operation." 40 Fed. Reg. 29114 (July 10, 1975)[hereinafter referred to as "FAA's 1975 Notice"]. FAA also stated that "[a]ircraft design and operational factors are indivisible from occupational safety or health factors as they affect the workplace of [] crewmembers." *Id.* Therefore, FAA concluded that "[w]ith respect to civil aircraft in operation, the overall FAA regulatory program . . . fully occupies and exhausts the field of aircraft crewmember occupational safety and health." *Id.*

In the 1975 policy statement, FAA also recognized a need to use its resources to protect employees on aircraft in operation to the fullest extent possible. It stated that it had promulgated "numerous regulations directly affecting the workplace" of these employees. FAA's 1975 Notice. These regulations covered,

> among other things, aircraft performance and structural integrity, safety equipment for emergency ditching and evacuation, fire protection, protective breathing rescue aids, [] emergency exits . . . cockpit lighting, crewmember seat belts, toxicity and other characteristics of materials in the crewmember workplace[,] . . . noise reduction, smoke evacuation, ventilation, heating, and pressurization[,] [m]aximum hours of duty and duty aloft for air carrier crewmembers[,] . . . [and] the protection of crewmembers from radioactive and other hazardous materials.

*Id.* FAA also stated that it intended to undertake rulemaking to "further achiev[e] safe and healthful working conditions for aircraft crewmembers." *Id.*[1]

Since 1975, FAA has promulgated regulations related to the working conditions of

---

[1] FAA considers an aircraft to be "in operation" from "the time it is first boarded by a crewmember, preparatory to a flight, to the time the last crewmember leaves the aircraft after completion of that flight, including stops on the ground during which [at] least one crewmember remains on the aircraft, even if the engines are shut down." 40 Fed. Reg. 29114 (July 10, 1975).

crewmembers on aircraft in operation. These include, among others, regulations dealing with: bloodborne pathogens, 14 C.F.R. §§ 121.309, 125.207, 135.177 (requiring that disposable latex or equivalent nonpermeable gloves be located on board commercial aircraft); engine noise, 14 C.F.R. Pts. 21, 36 (regulating noise emissions outside the aircraft); general safety, 14 C.F.R. § 25.793 (requiring slip resistant floors); and hazard communications, 14 C.F.R. § 91.085 (requiring hazardous materials recognition training for any persons responsible for the handling or carriage of such materials).[2]

In 1990, plaintiff AFA petitioned FAA for rulemaking, asking the agency to adopt certain OSHA safety regulations and apply them to crewmembers working in the airline industry. Complaint ¶ 17. FAA rejected the petition for rulemaking in 1997. *Id.* ¶ 19. The agency stated that, although the issues raised in AFA's petition had merit, they did not address an immediate safety concern. *Id.* AFA did not appeal that ruling, either for reconsideration within the agency or for judicial review before the court of appeals. *See* 49 U.S.C. § 46110(a). Nor has either plaintiff filed a later petition for rulemaking, either with FAA or with OSHA.

On August 7, 2000, FAA and OSHA entered into a memorandum of understanding (MOU)(Appendix A to <u>FAA/OSHA Aviation Safety and Health Team First Report</u> (Dec.

---

[2] FAA also has issued several policy statements and advisory guidelines for airlines to follow in order to ensure the safety of air passengers. Guidelines cover such issues as the detection and prevention of carbon monoxide; cabin ozone concentrations; first aid programs; decontaminating radiation fallout; interference with crewmembers; carry on baggage; oxygen equipment for medical use; cabin emergency lighting; and coordination/communication with flight crewmembers. All FAA regulations and advisory circulars can be accessed at http://www.faa.gov/regulations_policies/rulemaking/.

2000)[hereinafter referred to as "2000 Joint Report"](attached as Exhibit 1)),[3] the purpose of which was to enhance safety and health in the aviation industry.   The MOU clarified that FAA's 1975 Notice "affected only the application of OSHA requirements to the working conditions of employees on aircraft in operation" and noted that OSHA has enforced safety requirements with respect to maintenance and ground support personnel.  *Id*. at 30.  Pursuant to the MOU, a team comprised of employees from both agencies was charged with identifying "the factors to be considered in determining whether OSHA requirements can be applied to the working conditions of employees on aircraft in operation (other than flight deck crew) without compromising aviation safety."  *Id.*   After the joint team issued its report, FAA would "replace its 1975 Federal Register Notice with a new policy statement. . . setting forth the circumstances under which the regulatory requirements of OSHA will apply to the working conditions of employees on aircraft in operation" and also would consider public comments on the new policy statement.  *Id.*

The joint team issued a report in December 2000 (Exhibit 1), addressing whether and to what extent OSHA's existing standards and regulations relating to seven areas –*i.e.,* recordkeeping; bloodborne pathogens; noise; sanitation; hazard communication; anti-discrimination; and access to employee exposure/medical records– may be applied to cabin employees without compromising aviation safety.   *Id.* at ii.  Noting that the report was "not intended to modify, supplement, or replace any federal standard, policy, or legal interpretation," the joint team reported that OSHA's regulations relating to recordkeeping, hazard

---

[3]  In resolving a motion to dismiss, the Court may consider the FAA's 1975 policy statement and other public documents.  *See generally* Edes v. Verizon Communications, Inc., 417 F.3d 133, 137 n.4 (1st Cir. 2005); Covad Communications Co. v. Bell Atlantic Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005).

communication, and access to employee exposure and medical records did not implicate aviation safety. *Id.* at ii-iii. The 2000 Joint Report also noted that OSHA's anti-discrimination policy could be applied without compromising aviation safety, although the team "conceive[d] of few scenarios in which a safety or health hazard . . . would present the immediacy and degree of danger required to justify a work refusal protected under the OSH Act." *Id.* at iii. With respect to bloodborne pathogens, noise, and sanitation, the 2000 Joint Report stated that, although the OSHA standards may in some circumstances be applied without risk to aviation safety, any consideration to changing engineering or administrative controls would be subject to FAA's approval. *Id.* at ii-iii.

Although FAA has not yet issued a new policy statement replacing the 1975 policy statement, FAA subsequently initiated another investigation into whether the agency should promulgate additional regulations relating to occupational safety and health for the crew of operational aircraft. In a 2003 Federal Register Notice, FAA created an Aviation Safety and Health Partnership Program, under which air carriers would voluntarily provide employee illness and injury data to the FAA. 68 Fed. Reg. 10145, 10146 (March 4, 2003). FAA created this program based on the joint OSHA/FAA team's identification of "a lack of reliable empirical data concerning injury and illness hazards on aircraft in operation necessary to justify any rulemaking activities" at the time its report was issued. *Id.*

### C.    The Present Lawsuit

Plaintiffs, two Unions representing the interests of flight attendants, have brought suit against OSHA and FAA. In their Complaint, plaintiffs acknowledge that FAA has asserted "complete and exclusive jurisdiction over crewmember health and safety aboard a civil aircraft."

Complaint ¶ 15.  Plaintiffs allege, however, that FAA "has at all relevant times affirmatively declined to exercise its asserted statutory authority to prescribe or enforce standards or regulations affecting the occupational safety and health of crewmembers."  *Id.*, ¶ 16.  According to plaintiffs, the dearth of regulations or standards has resulted in  "[s]ignificant areas of regulatory neglect," which  include, but are not limited to, "recording and reporting of occupational injuries and illnesses; blood borne pathogens; noise; sanitation; hazard communications; access to employee exposure and medical records; and anti-discrimination protections for reporting safety and health violations."  *Id.*

Plaintiffs claim that, because FAA "has failed to exercise its asserted authority to regulate," a declaratory judgment should be entered finding that FAA has "no jurisdiction over," the "occupational health and safety of crewmembers (other than flight deck crew) working aboard civil aircraft in operation."  Complaint, Prayer for Relief.  Plaintiffs further allege that FAA's failure to exercise authority necessarily places jurisdiction over crewmember occupational safety and health exclusively within OSHA's purview.  *Id.*  Plaintiffs seek a preliminary and permanent injunction that compels OSHA to set and enforce standards with respect to crewmember occupational safety and health, and ask that the Court retain jurisdiction to ensure that the Secretary fully complies with this injunction.  *Id.*

## ARGUMENT

### I.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF RIPENESS

This case raises fundamental questions regarding the jurisdiction of the district court to hear plaintiffs' claims.  Whether placed under the mantle of "case or controversy," standing,

prematurity, no final agency action, or ripeness, plaintiffs' claims are not properly before this Court.

Ripeness is a justiciablity doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967). "[I]f the interests of the court and agency in postponing review outweigh the interests of those seeking relief, settled principles of ripeness squarely call for adjudication to be postponed." State Farm Mut. Auto. Ins. Co. v. Dole, 802 F.2d 474, 480 (D.C. Cir. 1986), cert. denied, 480 U.S. 951 (1987). *See also* Lujan v. National Wildlife Fed'n, 497 U.S. 871, 891 (1990) ("[A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review... until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out...."). In Abbott Laboratories, the Supreme Court set forth a two-pronged test for determining whether administrative action is ripe for judicial review, which requires a court to evaluate : (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration.  387 U.S. at 149.

Under the "fitness of the issues" prong, the court considers whether the disputed claims raise purely legal questions, City of Houston v. HUD, 24 F.3d 1421, 1431 (D.C. Cir. 1994); whether the court would benefit by postponing review until the issue has sufficiently "'crystallized' by taking on a more definite form," *id.*; and whether "resolution of the dispute is likely to prove unnecessary." State Farm, 802 F.2d at 479.  Here, at first glance, plaintiffs'

Complaint appears to raise purely legal questions: whether FAA has failed to adequately regulate standards for the safety and health of flight attendants and, if so, whether OSHA should be compelled to issue such regulations. Plaintiffs' claim nevertheless is not ripe for review because they have not availed themselves of the regulatory process which provides plaintiffs with a mechanism to petition FAA for rulemaking.[4] 14 C.F.R. Part 11. Ultimately, the filing of such a petition may effect the promulgation of at least some of the health and safety standards plaintiffs seek to have FAA adopt. "The interests of the court therefore favor postponing review until it is clear that judicial intervention is required, and will be consequential." Cronin v. FAA, 73 F.3d 1126, 1132 (D.C. Cir. 1996) (quoting National Ass'n of Regulatory Util. Comm'rs v. Department of Energy, 851 F.2d 1424, 1429 (D.C. Cir. 1988)).

The posture of plaintiffs' suit is at best premature. Other than a 1990 petition that was denied in 1997, plaintiffs have not requested that either FAA or OSHA undertake rulemaking with respect to safety and health standards for aircraft cabins. Both agencies have guidelines for such requests from the public, as well as procedures to be followed in the event the requests are denied. See 14 C.F.R. Part 11; 29 C.F.R Part 1911. In other words, plaintiffs' Complaint has been concocted out of thin air, with no precipitating events or final agency action by the defendant agencies, even though procedures exist for requesting agency action. Inasmuch as plaintiffs have not requested such action, they have not suffered a redressable injury for which

---

[4] The fact that AFA petitioned FAA for rulemaking in 1990 is not dispositive, inasmuch as that petition was denied in 1997. In order to timely challenge that denial, plaintiffs were required to file suit within six years, see Sendra Corp. V. Magaw, 111 F.3d 162, 165 (D.C. Cir. 1997), directly with the court of appeals. 49 U.S.C. § 46110(a). See also Aeorsource, Inc. v. Slater, 142 F.3d 572, 577-78 (3d Cir. 1998)(final FAA orders are reviewable by the courts of appeals).

relief may be granted and their claims should be dismissed.

In addition, plaintiffs cannot satisfy the "hardship" aspect of the ripeness inquiry. "It is well settled that for an institutional interest in deferral to be outweighed, postponing review must impose a hardship on the complaining party that is immediate, direct, and significant." State Farm, 802 F.2d 479- 80. Plaintiffs' complaint does not provide specific examples of threats to safety and health that flight attendants face as a direct result of the absence of the regulations they claim are necessary. At most, the Complaint alleges that FAA's failure to promulgate regulations has resulted in increased risk of injury to flight attendants based on a conclusory and incomplete analysis of Bureau of Labor Statistics. Complaint ¶¶ 7-9. Postponing review cannot, therefore, fairly be viewed as imposing a hardship inasmuch as plaintiff have failed to quantify the harm they face. Where "no irremediabl[y] adverse consequences [will result] from requiring a later challenge," Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 164 (1967), the hardship factor is not satisfied. *Accord* Cronin, 73 F.3d at 1133. Consequently, plaintiffs' claims are not ripe and should be dismissed and, even if plaintiffs were to follow the procedures that would lead to final agency action or rulemaking that would be ripe for review, such review would not be available in the district court.

## II.    PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF SHOULD BE DISMISSED BECAUSE FAA HAS EXERCISED COMPREHENSIVE JURISDICTION OVER THE HEALTH AND SAFETY ASPECT OF AIRCRAFT CABINS

Even if this Court did have subject matter jurisdiction over this action, the relief requested would not be appropriate. In their first cause of action, plaintiffs ask for a declaration that FAA has "failed to exercise its asserted jurisdiction to establish occupational health and

-11-

safety standards for crewmembers working aboard civil aircraft in operation" and that, consequently, OSHA retains jurisdiction over those working conditions. Complaint ¶¶ 16, 36-38 & Prayer for Relief. This Count rests upon a misunderstanding of the term "exercise" as used in Section 4(b)(1). Indeed, under relevant case law, FAA has exercised jurisdiction by issuing rules and regulations governing conditions relating to the health and safety of those who work as well as travel in the cabins of aircraft. For this reason, plaintiffs have failed to state a claim for which relief can be granted and Count I of the Complaint should be dismissed.

Pursuant to Section 4(b)(1), an agency displaces the OSH Act protections accorded employees if it has "exercise[d]" its "statutory authority to prescribe or enforce standards or regulations affecting" the "working conditions" of those employees. 29 U.S.C. § 653(b)(1). Such an exercise of statutory authority may occur in one of two ways: when the other agency either "assert[s] comprehensive regulatory authority" over working conditions or when the other agency "affirmatively regulate[s] the working conditions at issue." Chao v. Mallard Bay Drilling, Inc., 534 U.S. 235, 244-45 (2002). Although "exercise" as used in Section 4(b)(1) "requires more than isolated regulations peripherally affecting the working condition of employees," Donovan v. Red Star Marine Serv., Inc., 739 F.2d 774, 778 (2d Cir. 1984), *cert. denied,* 470 U.S. 1003 (1985), it does not require the agency to issue all-encompassing regulations governing every health and safety-related aspect of those working conditions. *See* Mallard Bay, 534 U.S. at 243; Southern Pacific Trans. Co. v. Usery, 539 F.2d 386, 391-92 (5th Cir. 1976), *cert. denied*, 434 U.S. 874 (1977). Indeed, an agency "can displace OSHA regulations by articulating a formal position that a given working condition should go unregulated or that certain regulations and no others should apply to a defined subject." Southern Pacific, 539 F.2d at 392. *See also* Assoc. of

American Railroads v. Dep't. of Transportation, 38 F.3d 582, 587-88 (D.C. Cir. 1994) (court

implied it would find comprehensive preemption where an agency "by its own account, claimed

exclusive jurisdiction"); Velasquez v. Southern Pac. Transp. Co., 734 F.2d 216, 218 (5th Cir.

1984).

    In this case, the parties agree that FAA has asserted comprehensive regulatory authority

over crewmember health and safety aboard a civil aircraft. *See* Complaint ¶ 15. Acting pursuant

to its statutory authority to regulate aircraft safety conditions, see 49 U.S.C. § 44701, FAA's

1975 Notice provided that its "safety regulatory responsibilities directly and completely

encompass the safety and health aspects of the work environment of aircraft crewmembers." 40

Fed. Reg. 29114 (July 10, 1975). That responsibility, the FAA added, "fully occupies and

exhausts the field of aircraft crewmember occupational safety and health" on aircraft in

operation, because "[a]ircraft design and operational factors are indivisible from occupational

safety or health factors as they affect the workplace of [] crewmembers." *Id.* FAA, thus, has

exercised its authority in a manner consistent with that required to preempt OSHA's jurisdicition

as set forth in Mallard Bay, 534 U.S. at 245.

    FAA's 1975 Notice also noted that the agency had already promulgated "numerous

regulations directly affecting" the working conditions of employees on aircraft in operation. *Id.*

These regulations covered, "among other things, aircraft performance and structural integrity,

safety equipment for emergency ditching and evacuation, fire protection, protective breathing

rescue aids, [] emergency exits . . . cockpit lighting, crewmember seat belts, toxicity and other

characteristics of materials in the crewmember workplace[,] . . . noise reduction, smoke

evacuation, ventilation, heating, and pressurization[,] [m]aximum hours of duty and duty aloft for

air carrier crewmembers[,] . . . [and] the protection of crewmembers from radioactive and other hazardous materials." *Id.* FAA further stated that it intended to do rulemaking to "further achiev[e] safe and healthful working conditions for aircraft crewmembers." *Id.* The 1975 policy statement thus evinces FAA's intent to assert comprehensive and exclusive jurisdiction over the health and safety aspects of flight attendants' on-board working conditions.

Moreover, since 1975, FAA consistently has acted in accordance with its assertion of that jurisdiction. In addition to the regulations noted in the 1975 policy statement, FAA has promulgated regulations regarding a variety of health and safety matters, including bloodborne pathogens, engine noise, general safety, and hazard communications. *See supra* at 5. Even plaintiffs' Complaint acknowledges that FAA has continued active consideration of whether the agency should promulgate additional regulations relating to the health and safety of cabin crew members. Complaint ¶ 30.

The foregoing regulatory activities belie plaintiffs' conclusory allegation that FAA "has at all relevant times affirmatively declined to exercise its asserted statutory authority to prescribe or enforce standards or regulations affecting the occupational safety and health of crewmembers." Complaint ¶ 16. *See* <u>James v. England</u>, 332 F.Supp.2d 239, 243 (D.D.C. 2004) (in resolving a motion to dismiss, "the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint"). Similarly, although plaintiffs assert that FAA has "neglect[ed]" the regulation of bloodborne pathogens, noise, sanitation, and hazard communications, the rules and regulations noted above show otherwise.

Plaintiffs also allege that FAA has neglected the "recording and reporting of occupational injuries and illnesses, . . . access to employee exposure and medical records, and

anti-discrimination protections for reporting safety and health violations." Complaint ¶ 16.
Those subjects, however, are not within the FAA's exclusive field of authority. *See* 49 U.S.C. §
42121 (authorizing Secretary of Labor to investigate and resolve complaints by employees of air
carriers who allege discrimination for whistleblowing activity about a "violation or alleged
violation of any order, regulation, or standard of the Federal Aviation Administration or any
other provision of Federal law relating to air carrier safety under this subtitle or any other law of
the United States"); 29 C.F.R. § 1904.3 (OSHA's recordkeeping requirements apply regardless of
whether or not another agency regulates safety and health requirements); Taylor Diving and
Salvage Co., Inc. v. United States Dep't of Labor, 674 F. Supp. 30, 33 (D.D.C. 1987) (holding
that OSHA's Record Access Standard did not affect "working conditions" and was not preempted
under Section 4(b)(1)).  Moreover, whereas some of the requirements of the OSH Act remain
with OSHA notwithstanding a section 4(b)(1) claim of exemption, as to the areas covered by the
FAA's 1975 Notice, FAA has not ceded any of its asserted authority to OSHA, whose authority
relating to aircraft cabins remains entirely preempted.  *Cf.* Baltimore & O. R. Co. v. OSHRC, 548
F.2d 1052, 1054-55 (D.C. Cir. 1976)(there is "no Congressional purpose in 4(b)(1) to treat a
proposal to act as action itself.").

    Plaintiffs also ignore FAA's assertion of the complexities involved in regulating the
cabins of passenger air planes, where the health and safety of the crew are inextricably
intertwined with the health and safety of the air traveling public.  In other words, assuming that a
risk exists for flight attendants in their workplace --the mobile cabin of a civilian aircraft-- it is
not feasible simply to refer to OSHA's standards and to address the problem.  For example,
assume that the noise decibel levels of one class of aircraft used as passenger planes exceed the

limits set forth in regulations promulgated by OSHA for occupational exposure to noise.  29

C.F.R. § 1910.95.  Provisions for abatement include the use of hearing protection devices, such

as earplugs.  Other remedies could be engineering controls, such as modifications to the engine

or the structure of the cabin, or administrative controls, such as the rotation of employees from

areas of the aircraft with higher noise levels.  According to FAA, none of these remedies could

be accomplished without implicating aviation safety.  *See* 2000 Joint Report at 12-13.  With

respect to the first option, FAA must ensure that hearing protection devices would not prevent

the crewmembers from hearing communications and instructions to initiate time-critical

emergency procedures; specifically, flight attendants must be able to hear chimes from the flight

deck, instructions from other crewmembers, passengers' requests for assistance, and

communications over the aircraft interphone.  *Id.* at 13.  *See also* 14 C.F.R. § 121.542(b)("No

flight crewmember may engage in . . . any activity during a critical phase of flight which could

distract any flight crewmember from the performance of his or her duties or which could interfere

in any way with the proper conduct of those duties.")  With respect to the second option, if either

mechanical or structural modifications were to be made to the aircraft in order to affect noise

levels, such changes would have ramifications affecting the aircraft and its compliance with FAA

safety requirements.   2000 Joint Report at 12-13.

Given the symbiotic relationship between the health, welfare, and safety of cabin crew

members and the public as well as the cockpit crew, it is reasonable for FAA to assert that any

interference with its assertion of comprehensive jurisdiction would compromise aviation safety.

For this reason, FAA's 1975 Notice included the statements that its special expertise placed it –

not OSHA – in the best position to balance aircraft safety and occupational safety and health; and

-16-

that applying OSHA's requirements to the working conditions of crewmembers on aircraft in operation would simply not be appropriate or warranted. *Cf.* <u>Southern Pac.</u>, 539 F.2d at 392 ("as the dominant agency in its limited area, [an agency] can displace OSHA regulations by articulating a formal position that a given working condition should go unregulated *or that certain regulations and no others should apply to a defined subject*. . . . [T]he scope of the exemption created by section 4(b)(1) is determined by the [agency's] intent, as derived from its articulations.") (emphasis added).

In conclusion, FAA's 1975 Notice and published regulations demonstrate beyond doubt that FAA has "exercised" its comprehensive jurisdiction over the health and safety aspects of airline attendants' working conditions. Even if it were true, as the Complaint alleges, that FAA has not proceeded with utmost dispatch on these matters and has not issued regulations on every topic of concern to plaintiffs, still FAA has "exercised" its statutory authority to regulate the working conditions at issue here. *See* <u>Southern Pac.</u>, 539 F.2d at 391 (rejecting the position that "every OSHA regulation remains operative until the [preempting agency] adopts a regulation of its own on that specific subject"). Plaintiffs, therefore, are not entitled to a declaratory judgment holding that FAA has not exercised its authority within the meaning of Section 4(b)(1).

III.    **THE DISTRICT COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS THAT OSHA SHOULD BE COMPELLED TO ASSUME RESPONSIBILITY FOR REGULATING THE HEALTH AND SAFETY OF FLIGHT ATTENDANTS IN THE WORKPLACE**

In their second cause of action, plaintiffs seek a writ of mandamus under 28 U.S.C. § 1361 to compel the Secretary of Labor to set and enforce OSHA standards with respect to crewmember occupational safety and health. Complaint ¶¶ 40-42 & Prayer for Relief. The Court need not reach this count since it is clear that FAA has preempted OSHA's authority to

-17-

regulate flight attendants' working conditions.  But even if preemption does not apply, the district

court lacks jurisdiction to consider count two and, therefore, it should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(1).

Plaintiffs cannot meet the requirements for issuance of a writ of mandamus.  Mandamus

relief is only available if plaintiff's' claim is clear and certain, the duty of a federal officer is

ministerial and so plainly prescribed as to be free from doubt, and no other adequate remedy is

available.  *See, e.g.,* Aerosource, Inc. v. Slater, 142 F.3d 572, 582 (3d Cir. 1998); Fallini v.

Hodel, 783 F.2d 1343, 1345 (9th Cir. 1986); Rush v. Parham, 625 F.2d 1150, 1154 (5th Cir. 1980).

Here, plaintiffs have failed to establish a "clear and certain" claim and the issuance of regulations

pertaining to the safety and health of cabin crewmembers clearly involves the exercise of

discretion, not merely the performance of a ministerial obligation.  Further, plaintiffs have

another remedy available to them: petitioning FAA for rulemaking, an action they have not

undertaken since 1990.

Plaintiffs' claim for  relief cannot rely on the Administrative Procedure Act's provisions

at 5 U.S.C. § 706, to "compel agency action unlawfully withheld."  In re American Rivers and

Idaho Rivers United, 372 F.3d 413, 418 (D.C. Cir. 2004).   The courts of appeals have exclusive

jurisdiction to review allegations that OSHA has unlawfully withheld agency action with respect

to its health and safety standards.  Oil, Chemical, and Atomic Workers Union v. OSHA, 145 F.3d

120, 122-23 (3rd Cir. 1998); In re Int'l Chem. Workers Union, 830 F.2d 369, 372 n.2 (D.C. Cir.

1987) (per curiam); International Union, UAW  v. Donovan, 756 F.2d 162, 163 (D.C. Cir. 1985).

*Accord* Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 76-77 (D.C. Cir.

1984).  This is true with respect to both OSHA's alleged failure to promulgate standards and its

alleged failure to enforce standards.  In both cases, the OSH Act commits review of final agency action to the courts of appeals.  *See* 29 U.S.C. §§ 655(f), 660.

Inasmuch as this Court lacks jurisdiction, the case should be dismissed.  Plaintiffs could not be entitled to an order compelling OSHA to promulgate and enforce health and safety standards for flight attendants' working conditions unless OSHA has "unlawfully withheld" agency action.  5 U.S.C. § 706.  The facts alleged in the complaint do not establish that OSHA has acted unlawfully.  To the contrary, the agency has made a good faith determination that the FAA has exclusive authority to regulate the working conditions at issue.

Moreover, relief under Section 706 would be inappropriate even if plaintiffs were to obtain a judgment declaring that FAA is not "exercising" jurisdiction within the meaning of Section 4(b)(1) of the OSH Act.  Neither plaintiffs nor any other member of the regulated community has petitioned OSHA to set or enforce standards with respect to the working conditions on aircraft in operation. Further, Section 6 of the OSH Act, 29 U.S.C. § 655, gives the Secretary wide discretion to determine whether and under what circumstances specific regulations should be issued.  *See* National Congress of Hispanic American Citizens v. Usery, 554 F.2d 1196, 1199 (D.C. Cir. 1977).  If, at some future point, OSHA is determined to have regulatory authority notwithstanding the FAA's assertion of exclusive jurisdiction, the promulgation of OSHA standards would have to run its course under Section 6 of the OSH Act. It is established law, as well, that the courts do not have jurisdiction to substitute their judgment for that of the agency.  Plaintiffs' request that the Court retain jurisdiction to essentially supervise the adminitrative process is likewise deficient.

Finally, count two is also legally deficient to the extent that plaintiffs seek to compel the

enforcement of standards. The OSH Act gives the Secretary wide discretion to determine

whether to enforce particular standards in a given circumstance. *See* 29 U.S.C. § 658. That

discretion is not subject to review by a court. *See* <u>Heckler v. Chaney</u>, 470 U.S. 821, 828-32

(1985).

<u>**CONCLUSION**</u>

For the foregoing reasons, plaintiffs' complaint should be dismissed for lack of

justiciability, failure to state a claim (Count I) and lack of jurisdiction (Count II).

Dated: January 23, 2006                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                            KENNETH L. WAINSTEIN
                                            United States Attorney

                                           _____/s/_____
                                           SANDRA M. SCHRAIBMAN, DC Bar No. 188599
                                           RICHARD G. LEPLEY, DC Bar No. 332346
                                           CARLOTTA P. WELLS
                                           U.S. Department of Justice
                                           P.O. Box 883
                                           Washington, D.C. 20044
                                           (202) 514-4522 (telephone)
                                           (202) 616-8470 (facsimile)

                                           Attorneys for Defendants