## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ASSOCIATION OF FLIGHT        )
ATTENDANTS - CWA, AFL-CIO,  )
 et. al.,                              )
                                    )
       Plaintiffs,            )
                                    )
     v.                          )     Civil Action No. 05-1850 (RCL)
                                    )
ELAINE L. CHAO, SECRETARY,  )
U.S. DEPARTMENT OF LABOR, et al.,  )
                                    )
       Defendants.         )
_____)

## MEMORANDUM OPINION

This matter comes before the Court on the defendants' Motion [5] to Dismiss. Upon consideration of defendants' motion, the opposition thereto, the reply brief, the applicable law, and the entire record herein, the Court concludes that the defendants' motion will be granted. The Court agrees with defendants' contention that plaintiffs' claims are not ripe thus the Court lacks subject-matter jurisdiction over this case.

## BACKGROUND

In this case, the Association of Flight Attendants, AFL-CIO ("AFA") and the Transportation Trades Department, AFL-CIO ("TTD") have brought suit against the Occupational Safety and Health Administration ("OSHA") and the Federal Aviation Administration ("FAA").

The Occupational Safety and Health Act of 1970 ("OSH Act") was enacted by Congress "to assure so far as possible every working man and woman in the Nation safe and healthful

1

working conditions." 29 U.S.C. § 651(b) (1970).  The OSH Act, which is administered by

OSHA, applies to all workplaces in the United States and Territories pursuant to 29 U.S.C. §

653(a) (1970).  The OSH Act also authorizes the Secretary of Labor to set and enforce

"mandatory occupational safety and health standards" to govern a broad range of employers who

engage in interstate commerce.  29 U.S.C. §§ 651, 654, 655, 659 (1970).  Furthermore, Congress

provided in Section 4(b)(1) that the OSH Act does not "apply to working conditions of

employees with respect to which other Federal agencies . . . exercise statutory authority to

prescribe or enforce standards or regulations affecting occupational safety and health."  29 U.S.C.

§ 653(b)(1) (1970).

Pursuant to 49 U.S.C. § 44701 (2000), the FAA Administrator "shall promote safe flight

of civil aircraft in air commerce by prescribing" regulations and minimum standards "in the

interest of safety" on topics ranging from aircraft design and manufacture to aircraft inspection to

aircraft performance.  On July 10, 1975, the FAA published a statement in the Federal Register

("FAA's 1975 Notice") asserting complete and exclusive jurisdiction over crewmember health

and safety on "civil aircraft in operation . . . from the time it is first boarded by a crewmember,

preparatory to a flight, to the time the last crewmember leaves the aircraft after completion of

that flight, . . . even if the engines are shut down."  40 Fed. Reg. 29114 (1975).  (Compl. ¶ 13.)

At all times since 1975 the FAA has continued to assert such complete and exclusive jurisdiction

over crewmember health and safety aboard a civil aircraft.  (Compl. ¶¶ 13-15.)

Since 1975, FAA has issued regulations related to the working conditions of

crewmembers on aircraft in operation.  These include, among others, regulations dealing with:

blood borne pathogens, 14 C.F.R. §§ 121.309, 125.207, 135.177 (requiring that disposable latex

or equivalent non-permeable gloves be located on board commercial aircraft); engine noise, 14

C.F.R. Pts. 21, 36 (regulating noise emissions outside the aircraft); general safety, 14 C.F.R. §

25.793 (requiring slip resistant floors); and hazard communications, 14 C.F.R. § 91.085

(requiring hazardous materials recognition training for any persons responsible for the handling

or carriage of such materials).  (Defs.' Mot. 5.)

On May 8, 1990, plaintiff AFA petitioned FAA for rule-making, asking the agency to

adopt certain OSHA safety regulations and apply them to crewmembers working in the airline

industry.  (Compl. ¶ 17.)  The requested regulations would have addressed such areas as the

recording and reporting of injuries, access to employee exposure and medical records, right to

inspections, safety definitions, the handling of hazardous materials, personal protective

equipment, medical and first aid, fire protection, and toxic and hazardous substances.  (Id.)  FAA

rejected the petition for rule-making on June 6, 1997.  (Id. ¶ 19.)  The agency stated that the

issues raised in AFA's petition had merit but did not address an immediate safety concern.  (Id.)

AFA did not seek administrative or judicial review of the agency's decision.  See 49 U.S.C. §

46110(a) (2003).

On August 7, 2000, FAA and OSHA entered into a memorandum of understanding

("MOU"), the purpose of which was to enhance safety and health in the aviation industry. (Defs.'

Mot. Ex. 1.)  The MOU clarified that FAA's 1975 Notice "affected only the application of

OSHA requirements to the working conditions of employees on aircraft in operation" and noted

that OSHA has enforced safety requirements with respect to maintenance and ground support

personnel.  (Id. at 30.)  According to the MOU, the FAA and OSHA agreed to establish a joint

team to identify the factors to be considered in determining whether the OSH Act's requirements

could be applied to the working conditions of employees on aircraft in operation without compromising aviation safety. (Compl. ¶ 21.) The MOU required the joint team to produce a first report within 120 days from the date of the MOU's execution that addressed whether and to what extent OSHA's existing standards and regulations with respect to six (6) specific health and safety areas could be applied to employees on aircraft in operation without compromising aviation safety. (Compl. ¶ 22.) The MOU also obligated the FAA to replace its 1975 Federal Register Notice with a new policy statement, published in the Federal Register, setting forth the circumstances under which the regulatory requirements of OSHA will apply to the working conditions of employees on aircraft in operation (other than flight deck crew). (Id. ¶ 23.)

The joint team issued their report in December 2000, but the FAA did not issue a new policy statement replacing the 1975 Notice. The FAA subsequently initiated another investigation into whether the agency should promulgate additional regulations relating to occupational safety and health for the crew of operational aircraft. In a 2003 Federal Register Notice, FAA created an Aviation Safety and Health Partnership Program, under which air carriers would voluntarily provide employee illness and injury data to the FAA. 68 Fed. Reg. 10145, 10146 (2003). FAA created this program based on the joint OSHA/FAA team's identification of "a lack of reliable empirical data concerning injury and illness hazards on aircraft in operation necessary to justify any rulemaking activities" at the time its report was issued. (Defs.' Mot. 7.)

On September 19, 2005, plaintiffs filed their complaint claiming that because the FAA "has failed to exercise its asserted authority to regulate," a declaratory judgment should be entered finding that FAA has "no jurisdiction over," the "occupational health and safety of

crewmembers (other than flight deck crew) working aboard civil aircraft in operation." (Compl.

12-13.)  Plaintiffs further seek a preliminary and permanent injunction that compels OSHA to set

and enforce standards with respect to crewmember occupational safety and health.  Finally,

plaintiffs ask that the Court retain jurisdiction to ensure that the Secretary fully complies with

this injunction.  (Id.) On January 23, 2006, defendants moved to dismiss this action pursuant Fed.

R. Civ. P. 12(b)(1) and 12(b)(6).

## DISCUSSION

**A.      Legal Standard**

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies

outside this limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

(1994).  Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,]

no action of the parties can confer subject-matter jurisdiction upon a federal court.'" Akinseye v.

Dist. of Columbia, 339 F.3d 970, 971 (D.C. Cir. 2003).  On a motion to dismiss for lack

of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of

establishing that the court has subject-matter jurisdiction.  Lujan v. Defenders of Wildlife, 504

U.S. 555, 561 (1992).  The court may dismiss a complaint for lack of subject-matter jurisdiction

only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." Empagran S.A. v. F. Hoffman-Laroche, Ltd., 315 F.3d 338,

343 (D.C. Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim,

however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a

Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a

claim.  <u>Macharia v. United States</u>, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).  Moreover, to determine

whether it has jurisdiction over the claim, the court may consider materials outside the pleadings.

 <u>Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).

**B.      Ripeness**

Plaintiffs' allege that 1) the FAA has failed to exercise its jurisdiction to adequately

regulate flight attendant working conditions aboard aircraft in operation and 2) OSHA has failed

to perform its statutory duty under the OSH Act to ensure a safe and healthful workplace for

those employees, and 3) without judicial review, flight attendants will continue to suffer

avoidable injuries and illnesses.  (Pls.' Opp'n. 11.)  In turn, defendants contend that plaintiffs'

claim is not ripe for review because they have not availed themselves of the regulatory process

which provides plaintiffs with a mechanism to petition FAA for rulemaking.  14 C.F.R. Part 11.

The Court agrees.

The ripeness doctrine is designed "to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements over

administrative policies, and also to protect the agencies from judicial interference until an

administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties."  <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148-49 (1967); <u>see also</u> <u>Reno</u>

<u>v. Catholic Soc. Servs., Inc.</u>, 509 U.S. 43, 57 n.18 (1993) (stating that "[the] ripeness doctrine is

drawn both from Article III limitations on judicial power and from prudential reasons for

refusing to exercise jurisdiction").  In <u>Abbott Laboratories</u>, the Supreme Court set forth a two-

part test for determining whether administrative action is ripe for judicial review, which requires

a court to evaluate : (1) the fitness of the issues for judicial decision, and (2) the hardship to the

parties of withholding court consideration.  387 U.S. at 149.

On the first element, the court looks to "whether [the issue] is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." Atl. States Legal Found. v. Envtl. Prot. Agency, 325 F.3d 281, 284 (D.C. Cir. 2003).  If a claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," it is not ripe for adjudication.  Id.  With respect to the second element, the court "must consider [plaintiffs'] countervailing interest in immediate review," Cronin v. FAA, 73 F.3d 1126, 1133 (D.C. Cir. 1996), and whether the postponement of judicial review is "outweighed" by the likelihood of "hardship on the complaining party that is immediate, direct, and significant." State Farm Mut. Auto. Ins. Co. v. Dole, 802 F.2d 479- 80 (D.C. Cir. 1986).

In terms of fitness of issues, plaintiffs argue their action is predicated upon the defendants' demonstrated inaction in failing to regulate the hazardous working conditions of flight attendants.  (Pls.' Opp'n. 12.)  The Court is not persuaded by plaintiffs' argument.  An administrative process exists that provides plaintiffs with a mechanism to petition either FAA or OSHA for rulemaking. 14 C.F.R. Part 11; 29 C.F.R Part 1911. The filing of such a petition could either spur the promulgation of the health and safety standards plaintiffs seek to have the agencies adopt, or, if denied, could serve as a basis for judicial review in the federal Court of Appeals. 29 U.S.C. §§ 655(f), 660; 49 U.S.C. § 46110(a).  "The interests of the court therefore favor postponing review until it is clear that judicial intervention is required, and will be consequential." Cronin, 73 F.3d 1126, 1132 (D.C. Cir. 1996) (quoting National Ass'n of Regulatory Util. Comm'rs v. Department of Energy, 851 F.2d 1424, 1429 (D.C. Cir. 1988)).

7

Since their 1990 petition was denied in 1997, plaintiffs have not renewed their request for either FAA or OSHA rulemaking with respect to safety and health standards for aircraft cabins.  Given the changed circumstances in the intervening years, the Court has not been presented sufficient reason to believe that such a renewed request would necessarily be futile.

In addition, plaintiffs cannot satisfy the "hardship" aspect of the ripeness inquiry. Hardship arises when the court, by withholding judgment, creates adverse effects of a legal or practical kind.  Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733-34 (1998).  Here, plaintiffs' complaint does not provide specific examples of threats to safety and health that flight attendants face as a direct result of the absence of the regulations they claim are necessary.  At most, the Complaint alleges that FAA's failure to promulgate regulations has resulted in increased risk of injury to flight attendants based on a conclusory and incomplete analysis of Bureau of Labor Statistics.  (Compl. ¶¶ 7-9.)  Postponing review cannot, therefore, fairly be viewed as imposing a hardship inasmuch as plaintiff have failed to quantify the harm they face. Where "no irremediabl[y] adverse consequences [will result] from requiring a later challenge," Toilet Goods Ass'n, Inc. v. Gardner, 387 U.S. 158, 164 (1967), the hardship factor is not satisfied.  Accord Cronin, 73 F.3d at 1133.

Accordingly, plaintiffs' claims are not ripe for judicial review.

## CONCLUSION

For the reasons stated herein, the Court will grant the defendants' motion to dismiss the plaintiffs' claims.

A separate Order will issue this date.

8

Signed by Royce C. Lamberth, United States District Judge, May 22, 2006.